FILED
CLERK, U.S. DISTRICT COURT

**06/09/2015**

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ **LM** _____ DEPUTY

1  VIOREL BUCUR, LACRAMIOARA BUCUR
2  2785 RUBIDOUX BLVD.
   RIVERSIDE, CA 92509
3  Phone: (818) 521-4507
   Fax (951) 784-7738
4  vlbassoc@yahoo.com
5  Plaintiffs in pro per
6
7              UNITED STATES DISTRICT COURT
8      CENTRAL DISTRICT OF CALIFORNIA, EASTERN DISTRICT
9                  ED CV15-01117         JGB
10 VIOREL BUCUR, Lacramioara      ) CASE NO.                        (KK)
   Bucur,                          )
                                   ) COMPLAINT FOR DAMAGES,
12        Plaintiffs,             ) RESTITUTION, AND INJUNCTIVE
                                   ) RELIEF:
13 Vs.                            )
                                   ) 1. FAILURE TO PAY EARNED WAGES AND
14                                 ) OVERTIME COMPENSATION IN VIOLATION
   FEDEX GROUND PACKKAGE SYSTEM,  ) OF CAL. LAB. CODE §§ 204, 210,
15 INC., MIRZA SHAMIM AHMAD; HENRY) 218, 510, 1194 AND 1198;
   POLLARD; AMIE CHALE; AMERICAN  ) 2. FAILURE TO PROVIDE REST PERIODS
16 ARBITRATION ASSOCIATION,       ) IN VIOLATION OF CAL. LAB. CODE
   MARGARET H. GILLESPIE, LITTLER ) §§226.7 AND 512;
17 MENDELSON, P.C.                ) 3. FAILURE TO PROVIDE ACCURATE
                                   ) ITEMIZED STATEMENTS IN VIOLATION
18                                 ) OF LABOR CODE §226;
                                   ) 4. UNFAIR COMPETITION IN VIOLATION
19                                 ) OF CAL. BUS. & PROF. CODE §17200
                                   ) *ET SEQ.*;
20       Defendants.              ) 5. VIOLATION OF FAIR LABOR
                                   ) STANDARDS ACT [29 U.S.C. §216]
                                   ) 6. BREACH OF WRITTEN CONTRACT;
22                                 ) 7. CONVERSION;
                                   ) 8. FRAUD & DECEIT;
23                                 ) 9. INTENTIONAL INFLICTION OF
                                   ) EMOTIONAL DISTRESS;
                                   ) 10. BREACH OF THE IMPLIED COVENANT
                                   ) OF GOOD FAITH AND FAIR DEALING
                                   ) 11.DECLARATORY & INJUNCTIVE
                                   ) RELIEF;
26                                 )
                                   )
                                   ) **JURY TRIAL DEMANDED**
                                   )
                                   )
                                   )
                                   )

                    COMPLAINT FOR DAMAGES-1

## JURISDICTION AND VENUE

1.    Jurisdiction is conferred on this Court by Section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b) and 28 U.S.C. §§ 1331, 1337, and 1350, as well as pursuant to 29 U.S.C. § 1132(e). Supplemental jurisdiction over Plaintiffs' claims under California law is conferred by 28 U.S.C. § 1367. Venue is proper in the Central District of California because all the Defendants have and at all relevant times maintained offices in Riverside County, California and committed the wrongful conduct against Plaintiffs in Riverside County, California.

## INTRODUCTION

2.    This is an action for damages arising out of a system of involuntary servitude which deprived Plaintiffs of the most basic rights guaranteed by the United States and California Constitutions and statutory law, as well as the compensation requirements of the Fair Labor Standards Act of 1938, 29 U.S.C. § 206, *et seq.* ("FLSA"), and various provisions of the California Labor Code ("Labor Code").

## THE PARTIES

3.    Plaintiffs Viorel Bucur and Lacramioara Bucur are citizens of the State of California, doing business and residing in the City of Riverside, State of California. Defendant FEDEX GROUND PACAKAGE SYSTEM, INC., hereinafter "FedEx" is a Pennsylvania Corporation doing business and authorized to do business in the City of Rialto, State of California. Defendant, MIRZA SHAMIM AHMAD, ("Ahmad"), is the regional manager for FedEx at their Rialto, California terminal.

COMPLAINT FOR DAMAGES-2

**GENERAL ALLEGATIONS**

4.    In 2001, Plaintiff Viorel Bucur ("Viorel") entered into a written employment contract or Operating Agreement ("OA") with FedEx, whereby Viorel agreed to carry and transport freight on behalf of FedEx from its Rialto, California "hub", to the contiguous States and FedEx promised to pay wages to Viorel for his services by making a direct deposit into Viorel's bank account.

5.    In 2005, Plaintiff Lacramioara Bucur ("Lucky") entered into a similar written employment contract, whereby Lucky promised to carry freight on behalf of FedEx from its Rialto "hub", to the contiguous States and FedEx promised to pay wages to Lucky for her services by making a direct deposit in Lucky's bank account.

6.    At all times relevant herein, each year from 2001 through 2011, FedEx will provide their employees only with the signature page of the employment contract and ask the employees to sign. After signing, FedEx will make a copy of the signature page only and give it to Plaintiffs and the other employees. At no time did Defendants FedEx and Ahmad ever provide Plaintiffs or other employees with a complete set of the written employment contract.

7.    FedEx requires their drivers to pick up and deliver packages within their assigned "Primary Service Area[s]." Drivers must deliver packages every day that FedEx is open for business, and must deliver every package they are assigned each day. The drivers must deliver each package within a specific window of time negotiated between FedEx and its customers. After each delivery, drivers must use an electronic scanner to send data about the delivery to FedEx. Even though FedEx does not require drivers to follow specific delivery, FedEx, however, tells its managers to design and recommend to its drivers routes that

COMPLAINT FOR DAMAGES-3

1  will "reduce travel time" and "minimize expenses and maximize earnings
2  and service."
3  8.    FedEx structures drivers' workloads to ensure that they work at a
4  minimum between 9.5 and 11 hours every working day, and sometimes as
5  many as 17 hours each working day, Drivers are expected to arrive at
6  their delivery terminals each morning, and they are not supposed to
7  leave the terminal until all their packages are available for pick-up.
8  FedEx instructs managers to make sure that drivers properly fill out
9  their paperwork and prepare their packages for delivery. Each terminal
10 sets a time by which all drivers must return at the end of the day. If
11 drivers want their trucks loaded by FedEx's package handlers, they
12 must leave their trucks at the terminal overnight.
13 9.    FedEx trained Plaintiffs and its other drivers on how best to
14 perform their job and to interact with customers. FedEx requires its
15 drivers to conduct themselves "with integrity and honesty, in a
16 professional manner, and with the proper decorum at all times." They
17 must "[f]oster the professional image and good reputation of FedEx".
18 10.   Plaintiffs' managers conducted up to four ride-along performance
19 evaluations each year, "to verify that the driver is meeting the
20 standards of customer service" required by the Operating Agreement.
21 Managers are supposed to observe and record small details about each
22 step of a delivery, including whether a driver uses a "dolly or cart"
23 to move packages, demonstrates a "sense of urgency," and "[p]laces
24 [his or her] keys on [the] pinky finger of [his or her] non-writing
25 hand" after locking the delivery vehicle.
26 11.   Plaintiffs and other drivers must follow FedEx's "Safe Driving
27 Standards." FedEx Operating Agreement allows drivers to operate more
28 than one vehicle and route, but only "with the consent of FedEx" and

COMPLAINT FOR DAMAGES-4

1  only if "consistent with the capacity of the [driver's] terminal."

2  Drivers may also hire third parties to help perform their work. Third-

3  party helpers must be "qualified pursuant to applicable federal, state

4  and municipal safety standards and [FedEx's] Safe Driving Standards."

5  They must be "fully trained" and must "conform fully" with the OA.

6  12.   Plaintiffs entered into the OA for an initial term of one, two,

7  or three years. At the end of the initial term, the OA provides for

8  automatic renewal for successive one-year terms if neither party

9  provides notice of their intent not to renew. The OA requires drivers

10  to submit claims for wrongful termination to arbitration.

11  13.   FedEx requires Plaintiffs and its drivers to provide their own

12  vehicles. Vehicles must not only meet "all applicable federal, state

13  and municipal laws and regulations," but also must be specifically

14  approved by FedEx. The OA allows FedEx to dictate the "identifying

15  colors, logos, numbers, marks and insignia" of the vehicles. All

16  vehicles must be painted "FedEx white", a specific shade of Sherwin-

17  Williams paint, or its equivalent. They must be marked with the FedEx

18  logo, and "maintained in a clean and presentable fashion free of body

19  damage and extraneous markings." FedEx requires vehicles to have

20  specific dimensions, and all vehicles must also contain shelves with

21  specific dimensions. Managers may refuse to let drivers work if their

22  vehicles do not meet these requirements.

23  14.   FedEx offers a "Business Support Package," which provides drivers

24  with uniforms, scanners, and other necessary equipment. FedEx deducts

25  the cost of the equipment from driver's pay. 99 percent of drivers

26  purchase the business support package. The scanners that drivers must

27  use to send delivery information to FedEx are not readily available

28  from any other source.

COMPLAINT FOR DAMAGES-5

15.   The OA requires drivers to comply with personal-appearance
standards and wear a FedEx uniform "maintained in good condition." The
required uniform includes a uniform shirt with the FedEx logo, uniform
pants or shorts, dark shoes and socks, and, if the driver chooses to
wear a jacket or cap, a uniform jacket or cap with the FedEx logo.
Drivers must keep their "personal appearance consistent with
reasonable standards of good order. . .promulgated from time to time
by FedEx." Drivers must be "clean shaven, hair neat and and trimmed,
free of body odor." Managers may refuse to let drivers work if they
are improperly dressed or groomed.

16.   The OA and FedEx's policies and procedures unambiguously allow
FedEx to exercise a great deal of control over the manner in which its
drivers do their jobs. Therefore, this factor strongly favors
Plaintiffs.

17.   FedEx can and does control the appearance of its drivers and
their vehicles. FedEx controls its drivers' clothing from their hats
down to their shoes and socks. It requires drivers to be "clean
shaven, hair neat and trimmed, [and] free of body odor." This detailed
appearance requirements clearly constitute control over its drivers.

18.   FedEx also controls the times its drivers can work. Although the
OA does not allow FedEx to set specific working hours down to the last
minute, it is clear from the OA that FedEx has a great deal of control
over drivers' hours. Drivers are not supposed to leave their terminals
in the morning until all of their packages are available, and they
must return to the terminals no later than a specific time. If drivers
want their vehicles loaded, they must leave them at the terminal
overnight. The combined effect of these requirements is substantially
to define and constrain the hours that FedEx's drivers can work.

COMPLAINT FOR DAMAGES-6

19.   FedEx can and does control aspects of how and when drivers deliver their packages. It assigns each driver a specific service area, which it "may, in its sole discretion, reconfigure." It tells drivers what packages they must deliver and when. It negotiates the delivery window for packages directly with its customers.

20.   Plaintiffs as well as FedEx drivers must provide maintenance at their own expense and must "bear all costs and expenses incidental to operation" of the vehicle. Drivers authorize FedEx to pay for vehicle licensing, taxes, and fees, and to deduct these costs from the drivers' pay.

### First cause of action

**For Failure to pay Earned Wages and Overtime Compensation**

**[Cal. Labor Code §§204, 210, 218, 510, 1194 and 1198]**

**(By Plaintiffs against FedEx and Ahmad)**

21.   Plaintiffs reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 20 of this Complaint.

22.   Cal. Labor Code § 204 requires employers to employees for all hours worked as follows: "all wages. . .earned by any person in any employment due and payable twice during each calendar month, on days designated in advance by the employer as the regular paydays." Cal. Lab. Code § 510 further provides that employees in California shall not be employed more than eight (8) hours in any workday or forty (40) hours in a workweek unless they receive additional compensation beyond their regular wages in amounts specified by law.

23.   Cal. Labor. Code § 218 and § 1194 establishes an employee's right to recover unpaid wages overtime compensation, interest thereon,

COMPLAINT FOR DAMAGES-7

1 together with the costs of suit, and attorney's fees. Cal. Lab. Code §

2 1198 states that the employment of an employee for longer hours than

3 those fixed by the Industrial Welfare Commission is unlawful.

4 24.   As set forth herein, Defendants FedEx and Ahmad's policy and

5 practice was to intentionally and uniformly deny payment to Plaintiffs

6 for all hours worked, and further failed to pay overtime compensation

7 for hours worked in excess of eight hours in a day and/or forty hours

8 in a workweek. This was done in an illegal attempt to avoid payment of

9 earned wages, overtime compensation and other benefits in violation of

10 the Cal. Lab. Code and Industrial Welfare Commission requirements.

11 25.   The Industrial Welfare Commission, ICW Wage Order No. 4, and

12 Labor Code § 515, set forth the requirements which must be complied

13 with to classify an employee as exempt from applicable labor laws. For

14 an employee to be exempt from these rules, all the following criteria

15 must be met and Defendants FedEx and Ahmad have the burden of proving

16 that:

17 (a)   The employee's primary duty must be management of the enterprise,

18 or of a customarily recognized department or subdivision; and,

19 (b)   The employee must customarily and regularly direct the work of at

20 least two (2) or more other employees; and,

21 (c)   The employee must have the authority to hire and fire, or to

22 command particularly serious attention to his or his recommendations

23 on such actions affecting other employees; and,

24 (d)   The employee must customarily and regularly exercise discretion

25 and independent judgment; and,

26 (e)   The employee must be primarily engaged in duties which meet the

27 test of exemption.

28

COMPLAINT FOR DAMAGES-8

1    Plaintiffs herein fail to meet the requirements of being an
2    "executive" within the meaning of Order No. 4.
3    26.   The Industrial Welfare Commission, ICW Wage Order No. 4, and
4    Labor Code § 515, set forth the requirements which must be complied
5    with to classify an employee as exempt from applicable labor laws. For
6    an employee to be exempt from these rules as a bona fide
7    "administrator", all the following criteria must be met and Defendants
8    herein have the burden of proving that:
9    (a)   The employee must perform off ice or non-manual work directly
10   related to management policies or general business operation of the
11   employer; and,
12   (b)   The employee must customarily and regularly exercise discretion
13   and independent judgment; and,
14   (c)   The employee must regularly and directly assist a proprietor or
15   an exempt administrator; or,
16   (d)   The employee must perform, under only general supervision, work
17   requiring special training, experience, or knowledge, or,
18   (e)   The employee must execute special assignments and tasks under
19   only general supervision; and,
20   (f)   The employee must be primarily engaged in duties which meet the
21   test of exemption.
22        None of the Plaintiff was an administrator because they all fail
23   to meet the requirements for being an exempt "administrator" under
24   Order No. 4.
25   27.   At all relevant times, Plaintiffs herein, worked more hours than
26   they were paid for, constituting a failure to pay all earned wages.
27   Furthermore, Plaintiffs worked more than eight hours in a workday,
28   and/or more than forty hours in a work week.

COMPLAINT FOR DAMAGES-9

28. Defendants FedEx and Ahmad failed to pay Plaintiffs, wages for the hours worked as required by Cal. Lab. Code § 204 and § 218, and overtime compensation for the hours they have worked in excess of the maximum hours permissible by law as required by Cal. Lab. Code §§ 510 and 1198, even though Plaintiffs were regularly required to work, and did in fact worked overtime hours.

29. As a result of the unlawful failure to pay additional compensation to the Plaintiffs, for the hours actually worked, Plaintiffs have suffered, and will continue to suffer, an economic injury in amounts in excess of $1 million.

30. Defendants FedEx knew or should have known that Plaintiffs performed hours of work before opening and after the closing of the Rialto hub (terminal), and Defendants FedEx and Ahmad systematically elected, either through intentional malfeasance or gross nonfeasance, not to pay them for their labor as a matter of uniform corporate policy, practice and procedure.

31. Plaintiffs request recovery of wages due and applicable overtime compensation according to proof, interest, attorney's fees and cost pursuant to Cal. Lab. Code § 218.5 and § 1194(a), as well as the assessment of any statutory penalties against Defendants FedEx and Ahmad.

32. In performing the acts and practices herein alleged in violation of labor laws and refusing to provide the requisite overtime compensation, Defendants FedEx and Ahmad acted and continued to act intentionally, oppressively, and maliciously towards the Plaintiffs, with a conscious and utter disregard of their legal rights, or the consequences to them, and with the despicable intent of depriving them of their property and legal rights and otherwise causing them injury

COMPLAINT FOR DAMAGES-10

1   in order to increase corporate profits at the expense of Plaintiffs

2   and other employees.

### SECOND CAUSE OF ACTION

#### For Failure to Provide Meal and Rest Periods

#### [Cal. Lab. Code §§ 226.7 and 512]

#### (By Plaintiffs against Defendants FedEx and Ahmad)

8   33.   Plaintiffs reallege and incorporate by reference, as though set

9   forth herein, paragraphs 1 through 32 of this complaint.

10   34.   Cal. Lab. Code § 226.7 provides that employers shall authorize

11   and permit employees to take rest periods at the rate of ten (10)

12   minutes net rest time per four (4)hours of work.

13   35.   Cal. Lab. Code §226.7 provides that if an employer fails to

14   provide an employee rest periods in accordance with this section, the

15   employer shall pay the employee one (1) hour of pay at the employee's

16   regular rate of compensation for each workday that the rest period is

17   not provided.

18   36.   Defendants FedEx and Ahmad have intentionally and improperly

19   denied rest period to Plaintiffs, in violation of Cal. Lab. Code §§

20   226.7 and 512. By virtue of Defendants FedEx and Ahmad's unlawful

21   failure to provide rest periods to them, Plaintiffs have suffered, and

22   will continue to suffer, damages in the amounts which are presently

23   unknown to them, but which will be ascertained and established

24   according to proof.

25   37.   Plaintiffs are informed and believe, and based on that

26   information and belief, allege that Defendants FedEx and Ahmad knew or

27   should have known that the Plaintiffs were entitled to rest periods

28   but purposely elected not to provide these mandated rest periods.

COMPLAINT FOR DAMAGES-11

38.   Plaintiffs are entitled to seek and recover reasonable attorney's fees and costs pursuant to Cal. Lab. Code §§ 226.7 and 512.

39.   In performing the acts and practices herein alleged in violation of the labor laws, Defendants FedEx and Ahmad acted and continue to act intentionally, oppressively, and maliciously toward Plaintiuffs, with a conscious and utter disregard of their rights, or the consequences to them, and with the despicable intent of depriving them of their property and legal rights and otherwise causing them injury in order to increase corporate profits at the expense of Plaintiffs.

### THIRD CAUSE OF ACTION

**For Failure to Provide Accurate Itemized Statements**

**[Cal. Lab. Code § 226]**

**By Plaintiffs against FedEx and Ahmad**

40.   Plaintiffs reallege and incorporate by reference, as though set forth herein, paragraphs 1 through 39 of this complaint.

41.   Cal. Lab. Code § 226 provides that an employer must furnish employees with "an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee  may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her last four numbers of their social security numbers, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rate by the employee."

COMPLAINT FOR DAMAGES-12

42.   At all times relevant herein, Defendants FedEx and Ahmad violated Labor Code § 226, in that they failed to properly and accurately itemize the number of hours worked by Plaintiffs at the effective regular rates of pay and the effective overtime rates of pay.

43.   Defendants FedEx and Ahmad knowingly and intentionally failed to comply with Labor Code § 226, causing damages to Plaintiffs. These damages include, but not limited to, unpaid wages for hours actually worked, the costs expended calculating the true hours worked and the amount of employment taxes which were not properly paid to state and federal tax authorities, plus reasonable attorney's fees and costs pursuant to Labor Code § 226(g).

### FOURTH CAUSE OF ACTION

**For Unlawful Business Practices**

**[Cal. Bus. And Prof.Code § 17200 et seq.**

**(By Plaintiffs against Defendants FedEx and Ahmad)**

44.   Plaintiffs reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 43 of this Complaint.

45.   Defendants FedEx and Ahmad are "persons" as the term is defined under Cal. Bus. & Prof. Code § 17021.

46.   Call Bus. & Prof. Code § 17200 defines unfair competition as any unlawful, unfair, or fraudulent business act or practice. Section 17200 applies to violations of labor laws and in the employment context.

47.   At all times relevant hereto, by and through the conduct described herein, Defendants FedEx and Ahmad have engaged in unfair and unlawful practices by failing to pay Plaintiffs wages due, and

COMPLAINT FOR DAMAGES-13

have failed to provide rest breaks, pursuant to the applicable Cal. Lab. Code, and Industrial Welfare Commission requirements in violation of Cal. Bus. Code § 17200 et seq., and have thereby deprived Plaintiffs, of fundamental rights and privileges and caused them economic injury as herein alleged. Defendants FedEx and Ahmad engaged in unfair competition by withholding compensation for hours worked and by failing to keep accurate information and time records and failing to accurately itemize the total hours worked by Plaintiffs in violation of California law. Defendants FedEx and Ahmad's conduct also violated federal law.

48.  By and through the unfair and unlawful business practices described herein, Defendants FedEx and Ahmad have obtained valuable property, money, and services from the Plaintiffs, and has deprived them of valuable rights and benefits guaranteed by law and contract, all to their detriment and to the benefit of Defendants FedEx and Ahmad so as to allow these defendants to unfairly compete against competitors who comply with the law.

49.  All the acts described herein above as violations of, among other things, the Cal. Lab. Code and Industrial Welfare Commission Wage Order, are unlawful and in violation of public policy; and in addition are immoral, unethical, oppressive, and unscrupulous, and constitute unfair and unlawful business practices in violation of Cal. Bus. & Prof. Code § 17200 et seq.

50.  Plaintiffs are entitled to, and do, seek such relief as may be necessary to restore to them the money and property which Defendants FedEx and Ahmad have acquired, or of which Plaintiffs have been deprived, by means of the above-described unfair and unlawful business practices.

COMPLAINT FOR DAMAGES-14

51.   Plaintiffs are further entitled to, and do, seek a declaration that the above-described business practices are unfair and unlawful and that injunctive relief should be issued enjoining Defendants FedEx and Ahmad from engaging in any of these unfair and unlawful business practices in the future.

52.   Plaintiffs, have no plan, speedy, and/or adequate remedy at law that will end the unfair and unlawful business practices of Defendants FedEx and Ahmad. As a result of the unfair and unlawful business practices described above, Plaintiffs have suffered and will continue to suffer irreparable harm. In addition, Defendants FedEx and Ahmad should be required to disgorge the unpaid moneys to Plaintiffs.

## FIFTH CAUSE OF ACTION

### VIOLATION OF FAIR LABOR STANDARDS ACT

### [29 U.S.C. §201 ET SEQ.]

### By Plaintiffs against Defendants FedEx and Ahmad

53.   Plaintiffs reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 52 of this Complaint.

54.   The Fair Labor Standards Act, 29 U.S.C. § 201, et seq., states that an employee must be compensated for all hours worked, including all straight time compensation and overtime compensation. 29 C.F.R. §778.223 and 29 C.F.R. §778.315. This Court has concurrent jurisdiction over claims involving the Fair Labor Standards Act pursuant to 29 U.S.C. §216.

55.   Plaintiffs worked more than 40 hours per week, but were not paid compensation for all hours worked, including overtime

COMPLAINT FOR DAMAGES-15

1   hours. Plaintiffs were not "exempt" from the requirements of the

2   Fair Labor Standards Act.

3   56.  Defendants FedEx and Ahmad violated the Fair Labor

4   Standards Act by failing to pay the hourly employees for all

5   hours worked, including overtime hours, as alleged herein above.

6

7                        **SIXTH CAUSE OF ACTION**

8                      **Breach of Written Contract**

9                 **(By Plaintiffs against FedEx and Ahmad)**

10

11  57.  Plaintiffs reallege and incorporate by this reference, as

12  though fully set forth herein, paragraphs 1 through 56 of this

13  Complaint.

14  58.  On or about February 2011, Plaintiff Viorel Bucur, entered into a

15  three-year written employment agreement with FedEx and Ahmad, whereby

16  Plaintiff Viorel Bucur agreed to carry freight on behalf of Defendants

17  FedEx and Ahmad from their Rialto, California terminal to the

18  contiguous 40 States, to which Defendants FedEx and Ahmad promised to

19  pay Plaintiff Viorel Bucur for his services by direct deposit in

20  Plaintiff Viorel Bucur's bank account.

21  **59.**  On or about November 2011, Plaintiff Lacramioara Bucur, entered

22  into a three-year written employment agreement with FedEx and Ahmad,

23  whereby Plaintiff Lacramioara Bucur agreed to carry freight on behalf

24  of Defendants FedEx and Ahmad from their Rialto, California terminal

25  to the contiguous 40 States, to which Defendants FedEx and Ahmad

26  promised to pay Plaintiff Lacramioara Bucur for her services by direct

27  deposit in Plaintiff Viorel Bucur's bank account.

28

                        COMPLAINT FOR DAMAGES-16

60. Plaintiffs honored their commitments to Defendants FedEx and Ahmad and carried freight on their behalf from the Rialto, California terminal to the contiguous United States throughout the end of 2012. However, Defendants FedEx and Ahmad refused to pay Plaintiffs for their services.

61. Included in the promises made by Defendants FedEx and Ahmad, was a promise that Defendants FedEx and Ahmad will not interfere with Plaintiffs' contracts with FedEx and not to transfer, sell or assign Plaintiffs' contracts to third parties without Plaintiffs' knowledge and consent.

62. Plaintiffs duly performed all of the obligations imposed upon them under the written employment Agreement. On or 2012, Defendants FEDEX and AHMAD breached the written contract by wrongfully and unjustifiably cancelling Plaintiffs' employment contracts and assigning these contracts to Chuck Wasarhelyi.

63. On or about the end of 2012, Defendants FedEx and Ahmad refused to pay Plaintiffs for their wages in carrying freight on behalf of FedEx and Ahmad, at their insistence from 2011 through 2012.

64. As a proximate result of FEDEX and Ahmad's breach of the written contract to pay Plaintiffs for their labor in 2011 and 2012, Plaintiffs suffered damages in a sum of $2 million.

65. Under the written employment agreement, FedEx and Ahmad promised and agreed not to assign Plaintiffs' employment contracts to third parties without Plaintiffs' knowledge and/or consent. Defendants FedEx and Ahmad breached the term of the employment contract by assigning Plaintiffs' employment contract to third parties. As a proximate and direct result of the breach of contract, Plaintiffs suffered damages

COMPLAINT FOR DAMAGES-17

in a sum of $10 million, which is the fair market value of the two employment contracts.

### SIXTH CAUSE OF ACTION

#### (Breach of Contract)

#### By Plaintiffs against all Defendants

66.   Plaintiffs reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 65 of this Complaint.

67.   On 1/7/2013, Plaintiffs filed a complaint in Riverside Superior Court, bearing case No. RIC 1300203 against Defendants FedEx and Ahmad, which was amended on 10/31/2013. Plaintiffs herein and Defendants Margaret H. Gillespie, the attorney representing Defendants FedEx and Ahmad stipulated and agreed in open court that the Superior Court Case and each of its causes of action be sent to arbitration.

68.   In 2014, Plaintiffs entered into a written contract with AAA, Amie Chale and Henry Pollard, who was picked by Defendant AAA to arbitrate the causes of action alleged by Plaintiffs in their FAC bearing case No. RIC 1300203. Each of these three (3) defendants promised Plaintiffs that for a sum of approximately $10,000.00 to be paid by Plaintiffs that these defendants would arbitrate each cause of action on the merits by way of trial.

69.   Plaintiffs relied on defendants' representations and agreed to these terms and did pay the sum of approximately $10,000.00 to AAA, Amie Chale and Henry Pollard.

70.   Plaintiffs duly performed all the conditions on their part required by the written agreement.

COMPLAINT FOR DAMAGES-18

71.  Throughout the course of arbitration, defendants and each of them, entered into a conspiracy to defraud Plaintiffs. Therefore each of these defendants/participants in the wrongful act is responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he/she/it was a direct actor and regardless of the degree of his/her/its activity.

72.  Plaintiffs allege on information and belief that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it. The conspiring defendants had actual knowledge that a tort is planned and concur in the tortious scheme with knowledge of its unlawful purpose. In addition to the actual knowledge of the planned tort, defendants and each of them had the intent to aid in its commission. Defendants, and each of them, have joined and actively participated in the continuing conspiracy to convert Plaintiffs' property and that of other consumers, and therefore these defendants became liable for the previous acts of other defendants and other coconspirators.

73.  Defendants and each of them formed and operated a conspiracy among them to defraud Plaintiffs and as a result of the wrongful act or acts done pursuant thereto have caused Plaintiffs to suffer damages, as more fully set forth below.

74.  Defendants and each of them, including the co-conspirators, have agreed to a common design to commit a wrong. Therefore each of these defendants/participants in the wrongful act is responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he/she/it was a direct actor and regardless of the degree of his/her/its activity.

75.   Plaintiffs allege on information and belief that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it. The conspiring defendants had actual knowledge that a tort is planned and concurred in the tortious scheme with knowledge of its unlawful purpose. In addition to the actual knowledge of the planned tort, defendants and each of them had the intent to aid in its commission.

76.   Plaintiffs allege on information and belief that each of the Defendants herein was not acting as an agent or employee for the other defendants but rather was acting as a part of a conspiracy to advance his/her/its own personal interests.

77.   Defendants, and each of them, aided and abetted, encouraged, and rendered substantial assistance to the other Defendants in breaching their obligations to Plaintiffs, as alleged herein. In taking action, as alleged herein, to aid and abet and substantially assist the commissions of these wrongful acts and other wrongdoings complained of, each of the Defendants acted with an awareness of its primary wrongdoing and realized that its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

78.   In 2015, Defendants FedEx, Ahmad, Gillespie and Littler Mendelson, PC, breached the contract when they refused to litigate and arbitrate the issues raised in each of Plaintiffs' Causes of action and somehow induced defendant Pollard to dismiss the arbitration. In 2015, Defendant Pollard dismissed the arbitration without rendering any reasons behind his fraudulent conduct.

COMPLAINT FOR DAMAGES-20

79.   As a proximate result of Defendants' breach of the written contract, Plaintiffs suffered damages in the sum of $10 million.

### SEVENTH CAUSE OF ACTION

#### (For Conversion)

#### By Plaintiffs against FedEx and Ahmad

80.   Plaintiffs reallege and incorporate by this reference, as though fully set forth herein, paragraphs 1 through 79 of this Complaint.

81.   In February of 2011 and thereafter, Plaintiffs were, and at all times relevant herein, were the owners of or entitled to immediately possess the following items of property:

    (a)   Income generated by Plaintiffs' employment Contracts;

    (b)   Two FEDEX Linehaul contracts worth $10 million.

82.   Defendants FedEx and Ahmad did not have any claim whatsoever to any of Plaintiffs' property as listed above. Defendants, and each of them, have conspired with one another and have wrongfully taken control of Plaintiffs' property. As a result of Defendants' acts of conversion, Plaintiffs have been damaged in a sum according to proof at time of trial, in no event less than $10 million.

83.   On or about Òctober 2012, Defendants FedEx and Ahmad converted the two linehaul contracts, without Plaintiffs' knowledge or consent, and assigned these linehaul contracts to third parties.

84.   In doing the acts herein alleged, Defendants acted with oppression, fraud, malice, and in conscious disregard of the rights of

COMPLAINT FOR DAMAGES-21

1  Plaintiffs, and Plaintiffs are therefore entitled to punitive damages

2  according to proof at time of trial.

3  85.  Starting in early February 2011 and continuing through the end of

4  2012, Defendants FedEx and Ahmad agreed to divert the revenue streams,

5  belonging to Plaintiffs. Plaintiffs are ignorant of the exact amount

6  that Defendants FEDEX and Ahmad converted for their own benefit and

7  use, but in no event under $5 million.

8  86.  As a proximate result of Defendants FedEx and Ahmad's conversion

9  of the revenue streams belonging to Plaintiffs and the conversion of

10  the two linehaul contracts, Plaintiffs suffered damages in the sum of

11  $10 million.

12                          **EIGHTH CAUSE OF ACTION**

13                            **(For Fraud & Deceit)**

14                     **By Plaintiffs against all Defendants**

15

16  87.  Plaintiffs reallege and incorporate by this reference, as

17  though fully set forth herein, paragraphs 1 through 86 of this

18  Complaint.

19  88.  In October 2013, Plaintiffs and Defendants *FedEx, Ahmad,*

20  Gillespie and Mendelson, P.C. entered into a written agreement in open

21  court whereby and Defendants *FedEx, Ahmad,* Gillespie and Mendelson,

22  P.C. made the following representations and promises to Plaintiffs:

23  that Plaintiffs' FAC and each of its causes of action be submitted to

24  arbitration; that each cause of action be litigated by way of trial on

25  the merits; that Defendants *FedEx, Ahmad,* Gillespie and Mendelson,

26  P.C. will not move to dismiss the arbitration for any reason

27  whatsoever.

28

                          COMPLAINT FOR DAMAGES-22

89.   In mid-2014, Plaintiffs entered into a written agreement with Defendants Henry Pollard, Amie Chale and AAA, whereby Defendants Henry Pollard, Amie Chale and AAA agreed to arbitrate each of Plaintiffs' causes of action on the merits by way of trial and the introduction of evidence at time of trial, in exchange for the payment by Plaintiffs of the approximate sum of $10,000.00, which Plaintiffs did pay.

90.   The representations made by Defendants and each of them as set forth hereinabove, were in fact false. The true facts were that these defendants, and each of them, did not intend to comply and abide by their promises and assurances.

91.   In addition to being utterly false, these representations were intended to deceive Plaintiffs and induce them into entering into an agreement with them to remove Plaintiffs' case from Riverside Superior Court to be arbitrated.

92.   Plaintiffs, at the time these representations were made by Defendants, and each of them, and at the time Plaintiffs took the actions as herein alleged; Plaintiffs were ignorant of the falsity of Defendants' representations and believed them to be true. Furthermore, Plaintiffs at the time these promises and representations were made and at the time Plaintiffs took the actions as herein alleged, were ignorant of Defendants' secret intentions not to perform and Plaintiffs, could not, in the exercise of reasonable diligence, have discovered Defendants' secret intentions.

93.   In reliance on these representations, Plaintiffs were induced to and did agree to arbitrate their FAC and each cause of action on the merits. Had Plaintiffs known of Defendants' true intentions not to perform under the agreement, Bucur would not have acted in the way they did.

COMPLAINT FOR DAMAGES-23

94.  As a result of the acts herein alleged, Plaintiffs sustained damages and loss of income and other related consequential damages, in the sum of $10 million. Each of Defendants' acts alleged herein was done with a wanton, reckless disregard for the rights of Plaintiffs and with full knowledge that Plaintiffs would be harmed as a result of Defendants' acts.

95.  In doing the acts herein alleged, Defendants, and each of them, acted with oppression, fraud and malice, and Bucur is entitled to punitive and exemplary damages in a sum according to proof at time of trial.

### NINTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

### (By Plaintiffs against Defendants)

96.  Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 95, inclusive, as though fully set forth herein.

97.  Defendants' conduct as set forth in full details herein, especially their acts of fraud, intentional misrepresentations and theft, were intentional and malicious and done for the purpose of causing Plaintiffs to suffer humiliation, anxiety, mental anguish, and emotional and physical distress. By reason of these malicious, oppressive and willful acts of Defendants, and each of them, Bucur is entitled to the award of punitive and exemplary damages in an amount sufficient to punish and make an example of defendants, and each of them.

COMPLAINT FOR DAMAGES-24

98.   Defendants, and each of them, knew or should have known that by refusing to comply with the terms of their agreements with Plaintiffs, and by way of their acts of conversion, fraud, deceit and misrepresentations that there existed the likelihood that Plaintiffs would be subjected to severe emotional harm, pain, suffering and trauma.

99.   Despite this knowledge, Defendants and each of them, persisted in their actions that were of a kind and nature that were calculated to lead to extreme emotional harm, stress, trauma, pain and suffering to Bucur as alleged herein.

100. As a direct and proximate result of Defendants' malicious, outrageous and deliberate acts, Plaintiffs did in fact suffer and continue to suffer from fright, shock, nervousness, anxiety, worry, horror, grief, mortification, humiliation, embarrassment, indignity, apprehension, fear, terror, ordeals, nightmares, loss of sleep, loss of appetite, stomach aches, migraines, upset stomach, nausea, vomiting, crying, sadness, stress fearfulness, restlessness and mental anguish.

101. As a further and approximate result of Defendants' misconduct, as set forth in details herein, Plaintiffs were injured and suffered damages in the sum of $10 million.

## TENTH CAUSE OF ACTION

### Breach of the Implied Covenant of Good Faith and Fair Dealing

### (By Plaintiffs against Defendants)

102. Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 101, inclusive, as though fully set forth herein.

COMPLAINT FOR DAMAGES-25

103.  Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement. This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement. The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose. This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

104.  Defendants, and each of them, did not act in good faith and did not deal fairly with Plaintiffs in connection with their contracts and agreements. As a proximate result of Defendants' breach of the implied covenant, Plaintiffs were damages in the sum of $10 million.

### ELEVENTH CAUSE OF ACTION

### Declaratory and Injunctive Relief

### (By Plaintiffs against Defendants)

105.  Plaintiffs incorporate herein by reference the allegations made in paragraphs 1 through 104, inclusive, as though fully set forth herein.

106.  There exists an actual, present and justifiable controversy between Plaintiffs and Defendants concerning the rights of Plaintiffs and the duties of Defendants concerning the conduct described herein.

107.  This controversy is ripe for judicial decision, and declaratory relief is necessary and appropriate so the parties may know the legal obligations that govern their present and future conduct.

COMPLAINT FOR DAMAGES-26

108.  Plaintiffs and the general public have no plain, speedy, and adequate remedy at law, in that in the absence of this Court's injunction, Defendants will seek to enforce their illegal conduct in violating California Labor Code and defrauding Plaintiffs and Defendants' other employees of their due wages and labor benefits.

### **PRAYER**

WHEREFORE, Plaintiffs pray as follows:

1.    For compensatory, special and general damages in the sum of $10 million;

2.    Pursuant to Business and Professions Code § 17203, that all Defendants, their successors, agents, representatives, employees, and all persons who act in concert with them be permanently enjoined from committing any acts of unfair competition in violation of § 17200, including, but not limited to, the violations alleged herein;

3.    for civil penalties pursuant to statute, restitution, injunctive relief;

4.    for damages for intentional mental and emotional distress, in the sum of $10 million;

6.    for punitive and exemplary damages in a sum to be determined at time of trial;

7.    Restitution for unjust enrichment;

8.  for reasonable attorney's fees pursuant to contract and/or statute;

9.    for this court to issue preliminary and permanent injunctions restraining Defendants FedEx and Ahmad and all persons acting pursuant to its direction and control from continuing to violate the provisions of the California Labor

COMPLAINT FOR DAMAGES-27

1  Code provisions regarding the payment of wages due to their

2  employees;

3  10.    for Declaratory Relief regarding the respective rights of

4  Plaintiffs and all Defendants as set forth in this complaint;

5  11.  for any and further relief as the court deems just and proper.

6

7

8                              **JURY DEMAND**

9      Plaintiffs demand a trial by jury on all causes of action so

10  triable.

11

12

13                          Respectfully submitted,

14

15  Dated: 6/8/2015

16                          Viorel Bucur
                            Plaintiff in Pro Per

17

18

19                          Lacramioara Bucur
                            Plaintiff in Pro Per

20

21

22

23

24

25

26

27

28

                        COMPLAINT FOR DAMAGES-28